IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FREDDIE FRANCIS, JR.,**

    **Plaintiff,**

v.                                                                    **Civil action no. 2:09cv139**
                                                                          **(Judge Maxwell)**

**LT. PETRISKO,**
**WARDEN JOE DRIVER,**
**C.O. BAKER,**
**LT. McCOLLUM**

    **Defendants.**

## **REPORT AND RECOMMENDATION**

### **I. Procedural History**

On November 30, 2009, the *pro se* plaintiff, Freddie Francis, initiated this case, which was docketed as a civil rights complaint filed pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. On December 1, 2009, the plaintiff was granted leave to proceed *in forma pauperis*. On January 4, 2010, the plaintiff paid his required initial partial filing fee. On February 1, 2010, the undersigned conducted a preliminary review of the file and ordered that a sixty day summons be issued for each of the defendants. On May 27, 2010, the defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. On June 8, 2010, the undersigned issued a Roseboro Notice. On June 28, 2010, the plaintiff filed a response. Accordingly, this matter is now ready for a Report and Recommendation.

1

## II. The Pleadings

### A. The Complaint

In his complaint, the plaintiff alleges that while incarcerated at the United States Penitentiary at Bruceton Mills, West Virginia ("USP Hazelton")[1], a staff member, defendant Petrisko, told other inmates he was a "snitch" or informant. The plaintiff further alleges that this action on the part of Petrisko resulted in his being assaulted and injured. The plaintiff further alleges that the defendants were indifferent to his safety in violation of the Eighth Amendment. The plaintiff seeks, as relief, compensatory damages in the amount of $100,000 against each defendant and punitive damages in the amount of $100,000 against defendant Petrisko.

### B. The Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment

In response to the plaintiff's complaint, the defendants assert that the plaintiff failed to exhaust his administrative remedies with respect to defendants Driver, McCollum, and Baker. Accordingly, the defendants argue that these three defendants should be dismissed from this action. In the alternative, the defendants argue that these same three defendants should be dismissed because the plaintiff fails to allege any personal involvement on their part, and Bivens liability cannot be premised on a theory of respondeat superior. Finally, the defendants argue that the plaintiff's Eight Amendment claims must be dismissed because he has failed to demonstrate that the defendants knew that his safety and security was at risk while housed in the Special Housing Unit ("SHU").

### C. The Plaintiff's Response

In response to the defendants' motion, the plaintiff asserts that he did exhaust his administrative remedies against defendants Driver, Baker, and McCollum by naming them in his in his attempt at

---

[1]The plaintiff is currently incarcerated at USP Coleman, which is located in Coleman, Florida, and was so incarcerated on the date he initiated this case.

informal resolution. In addition, the plaintiff maintains that he has demonstrated personal involvement on the part of these defendants because they knew he was at risk through a previous grievance he filed against another staff member he alleges called him a snitch. Moreover, the plaintiff asserts that mere incarceration at USP Hazelton places an inmate at risk, and the defendants are aware of that fact.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level,"

3

id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do

4

more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## IV. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes,"[2] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

The plaintiff has filed a total of 89 administrative remedy submissions since he entered into the custody of the BOP. (Doc. 31-5, p. 2). There are only two submissions in that history which could pertain to the instant action. (Id.) The first, Remedy ID No. 452090-F1 was initiated on May 8, 2007. In it, he complained that a correctional officer called him a "rat." This submission was rejected on May 8, 2007, because the plaintiff had failed to attempt informal resolution. He was instructed to refile the submission. He did resubmit the submission on May 29, 2007, but it was rejected the same day because he did not submit the remedy resolution through his counselor. The

---

[2] Id.

plaintiff did not file any further remedies, and therefore, did not exhaust his administrative remedies on this issue. (Doc. 31-5, p.3).

The second remedy related to this case is Remedy ID No. 513468, which is exhausted as to defendant Petrisko, but not at to defendants Driver, McCollum and Baker. In his BP-8 submission to USP Hazelton, the plaintiff specifically mentions that he is filing against "SIS or SIA Petrisko" alleging that he exposed him to a risk of serious bodily danger from other inmates by telling them he was a "snitch." (Doc. 31-6). However, the plaintiff does not name defendants Driver, McCollum, or Baker as having any involvement with exposing him to harm. (Id.) Nor does the plaintiff mention these three defendants in the body of his subsequent filings at the Institution, Regional Office, or Central Office. (Doc. 31-5, p. 4). Accordingly, the plaintiff had not exhausted his claims against defendants Driver, McCollum and Baker, and his claims against them should be dismissed with prejudice because it is now impossible for him to accomplish exhaustion.[3] However, even if the plaintiff had exhausted his claims against these defendants, they would still be due to be dismissed.

## B. Defendants Driver, McCollum and Baker

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations ." Truloch v. Freeh, 2755 F.2d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, in order to establish liability in a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal

---

[3]Within 20 calendar days of the date of the occurrence on which the complaint is based, an inmate may file a written complaint with the institution on the proper form. See 28 C.F.R. § 542.14(a). Because it now clear that the plaintiff failed to initiate the administrative remedy process with respect to the defendants, other than defendant Petrisko, within 20 calendar days of the date of the occurrence on which the complaint is based, he has procedurally defaulted his claim against defendants Driver, Baker and McCollum and cannot pursue them further.

7

involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainbright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for violation of a constitutional right in a Bivens case. Rizzo v. Good 423 U.S. 362 (1976).

Here, Plaintiff does not allege any personal involvement on the part of these three defendants. Specifically, he does not allege that any of these defendants told any other inmates that he was a snitch or informant. Nor, does he allege that these defendants had knowledge that he was at specific risk of assault by other inmates. The mere fact that incarceration at USP Hazelton poses a potential risk of harm is not the type of specific knowledge that would make these defendants liable for the assault on the plaintiff which occurred on September 13, 2008.

With respect to defendant Baker, the undersigned recognizes that the plaintiff alleges that he was the unit officer assigned to E-1 when the assault took place, but that he deliberately left the unit on the date of the assault. Accordingly, an inference could be made that defendant Baker was deliberately indifferent to the safety of all the inmates on the unit. However, defendant Baker has submitted an affidavit in which he notes that prior to the assault, he was supervising an inmate movement of approximately 600-800 inmates through the corridor outside E Unit. He then went into the E Unit to perform a safety check and observed a group of inmates, who he knew were not assigned to E Unit gathered in the vicinity of the plaintiff's cell. He instructed them to leave, and when they did not comply, he sent a radio transmission requesting immediate assistance. When he did not receive confirmation that his request had been received, he walked approximately 20 feet to the unit entrance to get assistance from the compound officer who was standing just outside the entrance. He estimates that this took him away from the group of inmates for approximately 15-20 seconds. When he returned with additional staff, the group of inmates were still gathered near the

plaintiff's cell. While he escorted those inmates out of the unit, he asked the compound officer to check on the plaintiff, who had his door closed at that time. When he returned to the plaintiff's cell seconds later, the compound officer had discovered that the plaintiff was bleeding. They isolated the plaintiff in the unit recreation room, placed a tourniquet on his arm, and sent a radio request for security and medical assistance. (Doc. 31-3, p.2). This affidavit, which is uncontradicted by the plaintiff, clearly establishes that defendant Baker was performing his assigned duties, which required him to be outside the immediate vicinity of the plaintiff's cell and rendered him unable to prevent the attack. Accordingly, the plaintiff has not demonstrated that defendant Baker was deliberately indifferent to the plaintiff's safety on the date of the attack.

Finally, it is pertinent to note that defendant McCollum was not present at USP Hazelton at the time the plaintiff was attacked. Therefore, he could not have taken any action to prevent the attack and was not deliberately indifferent to the plaintiff's safety. The plaintiff was assaulted at 8:16 a.m. on September 13, 2008, and defendant McCollum was assigned to the evening watch on that date as a correctional services lieutenant. (Doc. 31-2, p. 5 and 31-4, p.2)

**C. Defendant Petrisko**

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" Id. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id. n3. However, the Supreme

9

Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 837. Furthermore, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence, the plaintiff must show that the defendants knew of the risk and consciously disregarded it. Whitley v. Albers, 475 U.S. 312. 319 (1986); Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991),

There is no dispute that on September 13, 2008, the plaintiff was assaulted in his cell in Housing Unit E at USP Hazelton. Although the defendants provide no details, the plaintiff alleges that a group of inmates stabbed him about eight times. The plaintiff further alleges that he suffered stab wounds under an eye, in his chest, and on his left arm. There also appears to be no dispute that following the assault, the plaintiff was moved to the SHU and then transferred to USP Coleman. The plaintiff alleges that the assault was prompted by defendant Petrisko's statement to other inmates that the plaintiff was a "snitch."

The only evidence that plaintiff offers in support of this allegation is an affidavit from fellow inmate Clarence Scott. In his affidavit, Mr. Scott states as follows

> In the middle of Sept. 2008 there was three inmates came on this Range from the South they were telling other inmates that they had to put work in on a couple of inmates cause they were told by S.I.S. Lt. Petrisko that these inmates was snitches. Then I over heard 3 more from South and those 3 on the range speaking about the matter [illegible] Special Housing Recreation time. Later in the week when Francis and inmate [illegible] came to Recreation I learned this is who six inmate's was talking about, cause both of those inmate had been assaulty.

(Doc. 1, p. 10).

It is clear from this affidavit, that Mr. Scott did not hear defendant Petrisko make any statements regarding the plaintiff. Instead, his affidavit indicates that he overheard one or more conversations between other inmates, and from those conversations, he inferred that Lt. Petrisko had identified the plaintiff as a "snitch." Therefore, Mr. Scott's statement in his affidavit is based purely on hearsay.

For purposes of summary judgment proceedings, a Court may only consider affidavits when they present evidence that would be admissible if the affiant were testifying in Court. See Evan v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996); Bostic v. Rodriguez, 667 F.Supp. 2d 591, 603 (E.D. N.C. 2009). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, an affidavit must contain admissible evidence and be based on the personal knowledge of the affiant. See F.R.Civ.P. 56(e); Evans supra at 962; Bostic, supra at 603. Therefore, heresay evidence which is inadmissible at trial cannot be considered in deciding a motion for summary judgment. Maryland Highway Contractors Association v. Maryland, 933 F.2d 1246, 1251-52 (4th cir. 1991); See also Evans supra at 962.

Because the only evidence that Lt. Petrisko made a statement identifying the plaintiff as a "snitch" comes from a hearsay statement, it cannot be considered for purposes of the defendants' summary judgment motion. The only evidence that can be considered is the declaration of Lt. Petrisko in which he refutes any allegation that he made a statement identifying the plaintiff as a "snitch" or informant. (Doc. 31-1). Accordingly, he is entitled to summary judgment.

## V. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 30) be **GRANTED,** and

the plaintiff's complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. In addition, the clerk is directed to send a copy to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: July 26, 2010

                                                    /s/ James E. Seibert
                                                  JAMES E. SEIBERT
                                                  UNITED STATES MAGISTRATE JUDGE